IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

JEFFREY S. MARELLI, )
      Plaintiff, )
      ) C/A No. 2:0-CV-666-DB
v. ) **ORDER**
      )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
      )
      Defendant. )

Plaintiff Jeffrey S. Marelli filed suit pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3),[1] seeking judicial review of the decision of the Commissioner denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401-33, 1381-83f. After careful review of the entire case record, the parties' submissions, and arguments presented at a hearing held on June 23, 2010, the undersigned concludes the Commissioner's decision is supported by substantial evidence and free of legal error and should be **AFFIRMED.**

Plaintiff argues the Administrative Law Judge (ALJ) erred because he did not discuss the evidence that supported his determination that his impairments did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings").[2] However, the ALJ specifically cited to the exhibits he relied on in finding Plaintiff did not have an impairment that met or equaled any Listing in § 1.00 of the Listings (Tr. 12). The ALJ also specifically relied on the findings of the State agency psychologists in finding Plaintiff did not have an impairment that met or equaled Listing § 12.04 (Tr. 12). "The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment." *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996); *see* 20 C.F.R. § 404.1527(f).

---

[1]All references to the U.S.C. (United States Code) are to the 2006 edition.

[2]All references to the C.F.R. (Code of Federal Regulations) are to the 2009 edition of part 404, which addresses claims under Title II of the Act. All cited regulations have parallel citations in part 416, which address claims under Title XVI of the Act.

Plaintiff argues his impairments "should have at least equaled" Listing §§ 1.04, 12.04, or 12.06 (Pl.'s Br. at 10-11). However, the determination of whether a particular medical condition meets or equals a Listing is a medical judgment made at the initial and reconsideration stages of administrative review by the Commissioner's designated physicians and consultative medical specialists. *See* 20 C.F.R. § 404.1526. Here, the State agency medical and psychological consultants, upon whose findings the ALJ expressly relied (Tr. 12, 16), reviewed the medical evidence and found Plaintiff's impairments did not equal a Listing (Tr. 68-71). Social Security Ruling (SSR) 96-6p ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.").

Plaintiff argues the ALJ erred by not calling a medical expert to address the issue of medical equivalence. Relying on SSR 96-6p, he argues an "ALJ must obtain an updated opinion from a medical expert when additional evidence may change the state agency consultant's finding that the impairments are not equivalent in severity to a listed impairment" (Pl.'s Br. at 10-11). However, Plaintiff does not specify what additional evidence may have changed the State agency consultant's findings (Pl.'s Br. at 11). Here, the Court notes there were very few treatment records after the date the State agency medical consultants last reviewed Plaintiff's claim (Tr. 712-15), and finds these records would not have provided a basis for changing the their opinions with respect to medical equivalence (Tr. 752, 755, 760, 763, 765, 767, 773-76).

Plaintiff also argues the ALJ erred by finding the opinions of Lucinda Bateman, M.D., Plaintiff's treating physician, were not entitled to full weight (Pl.'s Br. at 11-13). The Court disagrees. The opinion of a treating physician on the nature and severity of a claimant's impairments is entitled to controlling weight where it is well-supported by clinical findings and consistent with other evidence in the record. If the opinion is either not well-supported by laboratory diagnostic

techniques or not consistent with other substantial evidence, i.e., not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§ 404.1527]." *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 10th Cir. 2003). The Court notes Dr. Bateman rendered several opinions that Plaintiff was "disabled" or "unable to work" (Tr. 505-06, 657-64, 668). She also opined he could only sit for 30 minutes, stand/walk for 15 minutes, and lie down for one hour at one time and sit for four hours, stand/walk for one hour, and lie down for two hours each in an eight-hour day. She said he could perform gross manipulation 34-66 percent of the time and reach 0-33 percent of the time (Tr. 723).

However, as the ALJ found, in all of Dr. Bateman's treatment records, there were few, if any, objective medical findings (Tr. 496-501, 503-06, 509-13, 516-17, 522-25, 530-31, 574-75, 579, 700, 704-07, 723-26, 735, 746-49, 751-58, 760-64, 766-67). *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (a treating physician's opinion may be rejected if his conclusions are not supported by specific findings). As the ALJ also found, Dr. Bateman's opinions appeared to be based on Plaintiff's subjective complaints rather than any objective medical findings (Tr. 496-97, 505-06, 657-64, 668, 723). *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001) (as various notes by the treating physician stating the claimant was unable to work did not indicate they were the product of an examination, the ALJ properly rejected them as based on the claimant's subjective assertions). As the ALJ also found (Tr. 16), Dr. Bateman's opinions were also inconsistent with her own treatment records (Tr. 503-06, 509-10, 574-75, 701, 706-07, 749, 752, 755, 760, 763, 765, 767). Plaintiff argues that, if the ALJ believed Dr. Bateman's opinions were inadequate, he should have re-contacted her (Pl.'s Br. at 13-14). The Commissioner's regulations require

> [W]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled ... [w]e will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.

20 C.F.R. § 404.1512(e). The Court finds ample substantial evidence supports the ALJ's finding that Plaintiff was not disabled. Thus, the ALJ was not required to re-contact Dr. Bateman.

Plaintiff next argues the ALJ erred in evaluating the credibility of his subjective complaints (Pl.'s Br. at 13-15). The Court does not agree. Here, as the ALJ found, Plaintiff's subjective complaints were inconsistent with the objective medical evidence (Tr. 15), a finding supported by the record. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (the consistency or compatibility of nonmedical testimony with objective medical evidence may be considered in evaluating credibility). As the ALJ found, Plaintiff's credibility was undermined by overwhelming evidence of drug-seeking and dishonest behavior in order to obtain opiates (Tr. 11, 15-16). Indeed, in January 2006, Ms. Jeys noted he filled a new prescription for Lortab (a narcotic) from a dentist using a different address and pharmacy than agreed upon in his pain management plan (Tr. 564-65). In February 2006, she noted "erratic" use of his schedule II medications (Tr. 561-62). In June 2006, he asked Ms. Jeys for more OxyContin, and when she refused, he became irate and stated he did not wish to see her as a provider any longer (Tr. 532). In August 2006, he told Brandon Wolsey, M.D., that he was not taking any pain medications. Plaintiff's father, who had accompanied him, "rolled his eyes" and stated this was not true (Tr. 337-38). In October 2006, Dr. Bateman noted he had "repeatedly taken his opioids inappropriately and shown drug seeking, abusive behaviors" (Tr. 516-17, 519). *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (when assessing credibility, the ALJ may properly consider drug seeking behavior).

As the ALJ found, Plaintiff's daily activities also undermined his credibility (Tr. 15). In February 2007, he told Dr. McGill he was capable of all regular and usual activities, including working on his computer for several hours per day, running his parents' computer network, baking special Italian cookies at Christmas time, preparing large meals if the entire family came over, doing watercolors, and arranging flowers (Tr. 729-34). In June 2007, he told Dr. Bateman he took a 13 day car trip to Phoenix with his family (Tr. 701). In July 2008, he told her he went on a trip to Seattle with his family and "walked a lot" (Tr. 765). *See Huston*, 838 F.2d at 1132 (the nature of daily

activities may be considered in evaluating credibility). Evidence Plaintiff malingered also undermined his credibility. In November 2005, Peter DeWeerd, M.D., noted he walked into the emergency room without a limp. However, he later seemed to have difficulty walking (Tr. 430-32). Patricia Gurrell, a nurse practitioner, noted he ambulated in the ICU and the halls and did not make facial grimaces. However, when he got into bed, he made facial grimaces (Tr. 333-36). *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (Commissioner appropriately discounted claimant's nonexertional impairment complaints due to lack of corroborative evidence and consulting physician's suspicion that claimant was malingering).

Plaintiff argues the ALJ erred in evaluating his residual functional capacity (RFC) (Pl.'s Br. at 15-16). The Court disagrees. The ALJ found Plaintiff could perform a range of sedentary unskilled work (Tr. 13-18). This finding is supported by the medical records of Drs. Bateman (Tr. 505-06, 575-76, 667, 706-07, 752, 755, 760, 763-64) and Mehr (Tr. 640-44) as well as Ms. Jeys (Tr. 534-42, 545-46, 551-52, 561-62, 564-69, 572-73, 576-77). The ALJ's findings are also supported by the findings of Drs. Grossell (Tr. 773-76), McGill (Tr. 729-34), and John Hardy, Ph.D. (Tr. 636-39). The ALJ's finding is also supported by the findings of the State agency physicians and psychologists (Tr. 643-53, 681-96, 697-98, 712-15), whose reports he specifically relied on (Tr. 16-17). Relying on SSRs 83-12 and 96-9p, Plaintiff argues a sit/stand option found by the ALJ in his RFC assessment is inconsistent with the ability to perform any light or sedentary work activity (Pl.'s Br. at 17-18). However, Plaintiff does not read either ruling in context. While both rulings acknowledge a sit/stand option erodes the occupational base for sedentary work, they also provide that, in such cases, an ALJ should consult a vocational source, which the ALJ did here (Tr. 61-63).

Plaintiff argues the ALJ's finding he was limited to work at no more than a low memory level was inconsistent with his finding he could only perform a job requiring a GED reasoning level of 3, math level or 2, and language level of 2 (Pl.'s Br. at 18-19). However, Plaintiff fails to explain how the GED levels specified by the ALJ were inconsistent with "low memory" work (Pl.'s Br. at

18-19). Plaintiff also argues the vocational expert (VE) testimony was inconsistent with the U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), as "the jobs of addresser and touch-up screener would require an individual to work at more than a low production level, more than a low concentration level, more than a low memory level, and require the ability to do repetitive/routine physical activity" (Pl.'s Br. at 19). Plaintiff, however, fails to specify which functions of those jobs exceeded the limitations found by the ALJ. His argument is further undercut by the VE's testimony he would reduce the numbers of jobs by 70 percent to account for the limitations in the hypothetical question (Tr. 63). The Court declines to entertain Plaintiff's argument that the ALJ violated Program Operations Manual System (POMS) § DI 25025.001C by only citing two jobs he could perform. Internal agency documents, like the POMS, "do not create judicially enforceable duties, and [courts] will not review allegations of noncompliance with their provisions." *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007).

In sum, the Court finds that, after assessing and weighing all the evidence, including the opinions of Plaintiff's treating physician, the ALJ reasonably found Plaintiff's impairments, alone or in combination, did not meet or equal a Listing and he had the RFC for a range of sedentary unskilled work. According to the VE, in response to a hypothetical question fairly and accurately characterizing all Plaintiff's functional limitations, a person with Plaintiff's vocational profile could perform the jobs of addresser and touch up screener, in numbers the ALJ found to be significant. Therefore, the Commissioner's final decision is supported by substantial evidence and free of legal error and is hereby **AFFIRMED**. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this \_\_\_ day of July, 2010.

DEE BENSON
United States District Judge

Approved as to form:

s/John J. Borsos
John J. Borsos
Attorney for Plaintiff